848 F.2d 414
 56 USLW 2719, 17 Bankr.Ct.Dec. 1272,
Bankr. L. Rep. P 72,329
 ONEIDA MOTOR FREIGHT, INC., a Corporation of the State of
New York, Appellant
v.
UNITED JERSEY BANK, a Corporation organized under the
Banking Laws of the United States of America.
UNITED JERSEY BANK, a New Jersey Corporation,
Defendant-Third Party Plaintiff,
v.
Donald T. SINGLETON, Third Party Defendant.
In re ONEIDA MOTOR FREIGHT, INC., Debtor, B.C. # 85-03606(DV).
 No. 87-5525.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 1, 1988.
Decided May 31, 1988.
Rehearing and Rehearing In Banc Denied July 1, 1988.
 
 Allan H. Klinger (argued), John A. Rizzo, Jane S. Shapiro, Klinger, Nicolette, Mavroudis & Honig, Oradell, N.J., for appellant.
 William S. Katchen (argued), John L. Laskey, Vincent F. Papalia, Clapp & Eisenberg, Newark, N.J., for appellee.
 Before SLOVITER, STAPLETON, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 Oneida Motor Freight, a Chapter 11 debtor, appeals the dismissal of its contract and tort action against United Jersey Bank, a secured creditor. We must determine whether Oneida, seeking damages for the bank's alleged breach of certain loan agreements, is estopped from litigating this action by the preclusive effect of prior bankruptcy proceedings.
 
 
 2
 We conclude that Oneida violated both its statutory and fiduciary duty to disclose this current claim against the bank during the pendency of the bankruptcy case. By virtue of this failure to disclose, equitable and judicial estoppel operate against further litigation by Oneida. Accordingly, we shall affirm the order of the district court.
 
 I.
 
 3
 Oneida Motor Freight, engaged in the interstate and intrastate trucking industry, and United Jersey Bank have maintained a banking relationship since 1983. In the course of their business dealings, the parties entered into two lending agreements. Under the terms of a "Revolving Credit Agreement", the bank would extend up to five million dollars in credit through loans and letters of credit. The parties also negotiated an "Accounts Receivable Security Agreement", whereby the bank would lend Oneida a percentage of Oneida's accounts receivable while maintaining a security interest in Oneida's accounts, equipment and inventory. The lending limits of these agreements have never been reached or exceeded.
 
 
 4
 In February 1985, Oneida settled a dispute which arose in connection with its acquisition of another trucking company, Dorn Transportation Company. In order to satisfy its obligations under the terms of the settlement, Oneida called upon the bank to pay certain outstanding letters of credit. Rather than charging against the letters of credit, however, the bank withdrew the necessary funds from Oneida's operating account. As a result, Oneida's account became habitually overdrawn. Nonetheless, at least for a period time, the bank honored Oneida's overdrafts.
 
 
 5
 In July 1985, the bank requested that the owner of Oneida, Donald Singleton, personally guarantee Oneida's debt. According to Oneida, when Mr. Singleton refused, the bank ceased honoring Oneida's checks. The dishonor of these checks allegedly compelled Oneida, on July 10, 1985, to file a petition under Chapter 11 of the Bankruptcy Code. Oneida then ceased its operations and proceeded with liquidation.
 
 
 6
 On July 11, 1985, the bank filed a motion for relief from the automatic stay entered in the bankruptcy proceeding. The application for relief further sought an order establishing the validity and extent of the bank's lien. On that same date, Oneida requested permission of the bankruptcy court for Oneida to use cash collateral of the bank, which was granted.
 
 
 7
 A series of subsequent orders was entered by the bankruptcy court in regard to matters pertaining to Oneida's and the creditors' rights, including, on September 30, 1985, a stipulation and order confirming a settlement among the bank, Oneida and the official unsecured creditors' committee. This order provided for an unconditional payment by Oneida to the bank in the amount of $6,650,000. Thereafter, on January 14, 1986, an order and a judgment were entered by the bankruptcy court, further detailing the extent and validity of the bank's lien. In this order, the amount due the bank by Oneida was established at $7,631,322.73 an amount already paid in full.
 
 
 8
 On August 14, 1986 the bankruptcy court entered an order confirming Oneida's Joint Plan of Reorganization. Nowhere in the plan or in the confirmation order is reference made to Oneida's current claim against the bank.[1]
 
 
 9
 Approximately seven months later, on March 11, 1987, Oneida commenced this action against the bank in the Superior Court of New Jersey. In its complaint, Oneida alleged breaches of the credit agreements, of the parties' course of dealing and of the bank's duty of good faith. Oneida also set forth a cause of action in tort for fraudulent misrepresentation on the part of the bank and its agents. Oneida alleged that the bank's prior assurances, coupled with its dishonor of certain checks "without notice" denied Oneida an adequate opportunity to seek alternate financing to satisfy the payees of the dishonored checks. Oneida additionally asserted that the actions of the bank seriously damaged its business reputation with its customers and creditors. Oneida cited these improper activities by the bank as the catalyst for its Chapter 11 filing.
 
 
 10
 The bank filed an answer and a third party complaint against Donald Singleton, Oneida's sole shareholder.[2] The bank then removed the action to the U.S. District Court for the District of New Jersey.
 
 
 11
 On May 14, 1987 the bank moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted, and/or Rule 12(c), motion for judgment on the pleadings. The district court, after argument, dismissed the complaint, 75 B.R. 235. The court held that since Oneida's claims against the bank arose from the same series of transactions which were the subject of the extensive prior bankruptcy proceedings, its failure to bring this particular claim to the bankruptcy court's attention violated fundamental principles of preclusion and barred Oneida from proceeding with the action.
 
 
 12
 Oneida filed a notice of appeal from this final decision of the district court. We have jurisdiction under the authority of 28 U.S.C. Sec. 1291.
 
 
 13
 The historical facts are undisputed. It is the preclusive effect of the bankruptcy proceeding upon this current action, if any, which is contested; resolution involves interpretation of legal precepts over which we invoke our power of plenary review.[3]
 
 II.
 
 14
 A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights. In Re Hannan, 127 F.2d 894 (7th Cir.1942).
 
 
 15
 Section 521 of the current Bankruptcy Code outlines a non-exhaustive list of the debtor's duties in a bankruptcy case. Foremost for our purposes, the debtor is required to "file a ... schedule of assets and liabilities ... and a statement of the debtor's financial affairs...." 11 U.S.C. Sec. 521(1) (1978).
 
 
 16
 An additional obligation is imposed by 11 U.S.C. Sec. 1125(b) mandating the filing of a disclosure statement containing "adequate information." Section 1125(a) defines adequate information as follows:
 
 
 17
 Sec. 1125. Postpetition disclosure and solicitation
 
 
 18
 (a) In this section--
 
 
 19
 (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan
 
 
 20
 ....
 
 
 21
 Concomitant with these prescribed duties is the debtor's "absolute and unlimited right to be heard in reorganization proceedings." Southmark Properties v. Charles House Corp., 742 F.2d 862, 871 (5th Cir.1984).
 
 
 22
 We regard the right-conferring language of Southmark as confirmation of the debtor's express obligation of candid disclosure. The preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor. One commentator, citing the relevant legislative history, labeled this duty as the pivotal concept in reorganization procedure under the Code. 5 Collier on Bankruptcy p 1125.03 (15th ed. 1988).
 
 
 23
 The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of "adequate information."
 
 
 24
 From the legislative history of Sec. 1125 we discern that adequate information will be determined by the facts and circumstances of each case. H.R.Rep. No. 595, 97th Cong., 2nd Sess. 266 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6225. It has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. Monroe County Oil Company v. Amoco Oil Co., 75 B.R. 158 (S.D.Ind.1987). The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions. In Re Galerie Des Monnaies of Geneva Ltd., 55 B.R. 253 (Bankr.S.D.N.Y.1985), aff'd, 62 B.R. 224 (Bankr.S.D.N.Y.1986).
 
 
 25
 A strong interest to achieve finality pervades Chapter 11 arrangements. Bohack Corp. v. Iowa Beef Processors, Inc., 715 F.2d 703 (2d Cir.1983). This goal of finality was supported by the Supreme Court in Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), holding that confirmation of a plan acts to bar attempts by the parties to relitigate any of the matters that could have been raised during the bankruptcy proceedings. 5 Collier on Bankruptcy p 1141.01 (15th ed. 1988). See also, In Re Penn Central Transportation Co., 771 F.2d 762 (3d Cir.1985), cert. denied, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985).
 
 
 26
 Disclosure is important, in this case, not only to the bank as an adversary and as a creditor, but to the other creditors and to the bankruptcy court. Here, "the silence" in the Oneida bankruptcy record concerning this present claim, as they say in the vernacular, "is deafening." In Schedule A-2 of its Statement of Financial Affairs required by Sec. 521, Oneida acknowledged its debt to the bank in the amount of approximately 7.7 million dollars, without any mention of a setoff. The debt to the bank in part represented principal and interest due on the lending agreements, the alleged breach of which Oneida now seeks to place at issue. In the portion of the statement requiring enumeration of "contingent and unliquidated claims of every nature, including counterclaims ...", Oneida listed only an unrelated accounts receivable claim of $6,827.030. (Emphasis added.) We conclude that the reorganization plan presented by Oneida to the creditors for confirmation, lacking disclosure of the potential for recovery against the bank, was informationally deficient, and not cured by the later modification.[4] The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim.
 
 
 27
 We can assume that revealing the potential action may also have impacted upon the bank's decision to enter into the stipulation establishing the extent and validity of its lien against Oneida and to vote for confirmation. The practical effect of a successful prosecution of Oneida's claim would be to require the bank to make restitution of the amount realized on its bankruptcy claim, since Oneida's present action calls into question the bank's right to collect its secured debt. This would also constitute a successful collateral attack on the bankruptcy court's order confirming the reorganization plan. In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings, particularly where, as here, the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications. County Fuel Company v. Equitable Bank Corporation, 832 F.2d 290 (4th Cir.1987).
 
 
 28
 In order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding the finality of plans which they have voted to approve, we hold that under the facts here present Oneida's failure to announce this claim against a creditor precludes it from litigating the cause of action at this time.
 
 III.
 
 29
 Oneida asserts that it did not make known the presence of this cause of action during the course of the bankruptcy proceeding primarily because the bankruptcy matter was never in a procedural posture for a proper assertion of this claim.
 
 
 30
 Oneida argues that the bank's decision to commence a "contested matter" when requesting relief from the automatic stay rather than instituting an "adversary proceeding" foreclosed Oneida's obligation to raise this current claim. Oneida notes that Bankr.Rule 9014, governing contested matters, delineates other bankruptcy rules which can apply to contested matters. Rule 9014 does not, however, cross-reference Rule 7008, allowing for a debtor to raise affirmative defenses to a creditor's claim, or Rule 7013, allowing a debtor to assert counterclaims against a creditor.
 
 
 31
 Recognizing that Rule 9014 allows the bankruptcy court, at any stage in a particular matter, to direct that the unenumerated rules of Chapter 7 shall apply, Oneida states that it could not raise its claim because the bankruptcy court did not utilize this permissive authority. We are somewhat surprised by this argument because the bankruptcy court was totally unaware that Oneida thought it had such a claim and the bankruptcy court was, therefore, never in a position to direct application of rules which might otherwise have been applicable.
 
 
 32
 Oneida further argues that it had no obligation to raise the claim when the bank sought relief from the automatic stay. Oneida cites several cases for the proposition that a motion for relief from stay, as brought by the bank under 11 U.S.C. Sec. 362(d), is not the proper setting for adjudication of a counterclaim. See, e.g., In Re Lexington Racquetball Club, Inc., 58 B.R. 103 (Bankr.E.D.Pa.1986); In Re Transleisure Corp., 41 B.R. 201 (Bankr.E.D.N.Y.1984). Despite these cases, it is clear that while stay proceedings may not be proper for adjudication of a counterclaim, a party may, nevertheless, raise its counterclaim at that time. One court noted:
 
 
 33
 The Court fully agrees that a preliminary hearing under Sec. 362 is not the proper time or place for a full adjudication of the trustee's claims against the creditor.... However, there is a tremendous difference between adjudication of the merits and mere consideration of counterclaims and defenses.
 
 
 34
 In Re Tallywell Services, Inc., 45 B.R. 149, 151 (Bankr.E.D.Mich.1984). S.Rep. No. 95-989, 95th Cong., 2d Sess. 66 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5852.
 
 
 35
 The next procedural event providing an opportunity to bring this present claim to the forefront in the bankruptcy proceeding occurred when a hearing was held regarding Oneida's request, opposed by the bank, for use of cash collateral. After testimony, the parties consented to a cash collateral arrangement and partial vacation of the automatic stay which were memorialized in the bankruptcy court's order of July 25, 1985. It is not unreasonable to conclude that neither the bankruptcy court, nor particularly the bank, would have agreed to allow Oneida to utilize the collateral in the hands of the bank if a question as to the bank's threshold right to the funds was put at issue.
 
 
 36
 Oneida also asserts that it had no obligation to raise the claim when the bankruptcy court entered orders confirming validity of the bank's loan. Four separate orders were entered regarding the validity, priority and extent of the bank's claim against Oneida. The end result of these orders was the establishment and confirmation of the amount of the bank's claim for 7.7 million dollars. No affirmative defenses, counterclaims or objection to the claim were pleaded or raised in connection with entry of these orders. Oneida contends that these orders involve different causes of actions than those presented by the district court complaint, and thus did not provide an opportunity to raise its defense to the claim. As we discuss later, we reject this argument of Oneida's, finding instead that the two claims stem from the same transaction, i.e., alleged breaches of the loan agreement present an issue of fact common to the matters before the bankruptcy court in determining the extent and validity of the bank's lien based on the loan agreement.
 
 
 37
 Although Oneida may be technically correct in its argument that it was never procedurally compelled to raise its claim, we are satisfied that its failure to mention this potential claim either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution precludes this later independent action. Even absent a specific mandate to file a counterclaim, complete disclosure is imperative to assist interested parties in making decisions relevant to the bankrupt estate.
 
 IV.
 
 38
 We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. Scarano v. Central Railroad Co., 203 F.2d 510 (3d Cir.1953); USLIFE Corp. v. U.S. Life Insurance Co., 560 F.Supp. 1302 (N.D.Tex.1983).
 
 
 39
 We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.
 
 
 40
 Oneida argues that judicial estoppel is not applicable because the claims raised in this lawsuit are entirely different, factually and legally, from those matters addressed in the bankruptcy proceeding.[5] In light of Oneida's threshold assertion in its district court complaint that the bank's breach of the lending agreements was the catalyst to its Chapter 11 filing, we are unpersuaded by this argument. The relative rights and obligations of these parties are embodied in the lending agreements and the parties' course of dealing. To be successful in this action, Oneida must demonstrate a deviation from the contracted-for and established business relationship--a deviation which would certainly call into question any rights which the bank could assert as a creditor of Oneida for obligations accruing under the lending agreements. Cf. Paradise Hotel Corporation v. Bank of Nova Scotia, 842 F.2d 47 (3d Cir.1988) (debtor, after filing a voluntary bankruptcy petition, requested the bankruptcy court to stay a previously-filed involuntary petition; debtor's stated motivation was to preserve potential claims arising from filing of the involuntary petition to pursue these claims later).
 
 V.
 
 41
 The district court, although focusing primarily upon basic principles of res judicata, properly stressed the debtor's special duty of candid disclosure when it granted the bank's motion to dismiss.
 
 
 42
 While the result of terminating this lawsuit may produce a harsh result to other creditors of Oneida whose claims have not been paid in full, we are mindful of our review authority here--we have been asked to rule only on the propriety of the district court's conclusion with respect to the bank. Although we focus our decision on estoppel by reason of failure to disclose, we cannot say that the district court erred in its result. We shall affirm the order of the district court.
 
 STAPLETON, Circuit Judge, dissenting:
 
 43
 Concern for Oneida's numerous unsecured creditors compels me to dissent from the court's disposition. Those creditors, as well as Oneida, stand to lose by virtue of that disposition. If Oneida had been able to foresee this court's novel application of equitable and judicial estoppel, it would have been able to protect itself against the loss the court today imposes upon it. Oneida's unsecured creditors, however, had no way of protecting themselves and should not be required to contribute towards a windfall for an alleged wrongdoer.
 
 I.
 
 44
 The court professes to steer clear of the claim preclusion analysis that underlies the district court's decision. It does so, however, only in the wake of an analysis sounding as much in claim preclusion as in the estoppel theories it embraces, and in a fashion which reflects, at most, only minor quibbles with the district court's view. I therefore begin with a discussion of the claim preclusion issue.
 
 
 45
 In effectuating the indisputable public interest in finality in bankruptcy proceedings, courts apply ordinary rules of claim and issue preclusion in the bankruptcy context. See e.g. Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir.1972); Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp., 60 B.R. 412, 414 (D.V.I.1986). Restatement (Second) of Judgments Sec. 24(1) sets forth the general rule with respect to claim preclusion, stating that:
 
 
 46
 When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
 
 
 47
 The court is simply mistaken, as was the district court, to the extent it suggests that this principle directs the outcome reached in this case. Section 24(1) prohibits claim-splitting, which by definition occurs when a party who has once asserted a claim attempts to reintroduce the claim in another guise thereafter. Here, Oneida asserted no claim against the bank in the bankruptcy proceedings. Having made no previous attempt to pursue a claim against the bank, Oneida cannot now be said to be prosecuting, and forcing the bank to defend, a suit for the second time.
 
 
 48
 One might argue to greater effect that Oneida's claims are precluded because Oneida did not file a counterclaim in response either to the bank's proof of claim or to its motion to lift the automatic stay and determine the extent and validity of its lien. Section 22(2) of the Restatement (Second) of Judgments states:
 
 
 49
 A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
 
 
 50
 (a) the counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
 
 
 51
 (b) the relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.
 
 
 52
 For me, analysis of this case under this applicable legal principle dispels any doubt about whether it is barred by claim preclusion. As the court acknowledges, no compulsory counterclaim statute or rule required Oneida to assert its claim in the bankruptcy proceedings. Because the bank's motion to establish the validity and extent of its lien and to lift the automatic stay gave rise to contested, rather than adversary proceedings, Bankruptcy Rule 9014 governed and Fed.R.Civ.P. 13(a)[1] was inapplicable absent explicit court direction to the contrary. The court issued no such direction. Similarly, while the Code calls for the disclosure of claims, as we discuss hereafter, no Code provision requires that the debtor actually litigate in the bankruptcy proceedings any claim the debtor happens to have against one of its creditors.[2] Indeed, as noted in our subsequent discussion, Oneida's reorganization plan provides by its very terms, See Article XII, App. at 146,[3] that all claims and causes of action of Oneida's not expressly released or terminated in accordance with the plan may be prosecuted by Oneida or the Creditor's Committee after entry of the confirmation order.
 
 
 53
 Nor can it be said that Oneida's decision to prosecute its claims now, after the close of the bankruptcy proceedings, threatens to undermine a judgment of the bankruptcy court and thus that Oneida's claims should be barred on that basis. See Restatement (Second) of Judgments Sec. 22(2)(b).[4] While the court suggests that such a danger is presented by the facts of this case, I fail to see the logic of its argument. The bankruptcy court entered orders reflecting the undisputed facts that the bank had loaned Oneida more than $7.6 million, that Oneida was indebted to the bank to that extent, and that the bank's lien on Oneida's property securing that amount was valid. Oneida had no basis for contesting its debt to the bank or the validity of the bank's lien and, accordingly, it did not contest the bank's applications to the bankruptcy court. Oneida now seeks to prosecute behavior by the bank, occurring after the loaning of the $7.6 million, which Oneida believes was both impermissible and directly responsible for the circumstances that led to its bankruptcy. Resolution of the question of the propriety of the bank's behavior in Oneida's favor and entry of a judgment against the bank on Oneida's claims would be entirely consistent with the determinations of the bankruptcy court that Oneida had a duty to repay the $7.6 million loaned to it and that the bank's security interest had been perfected.[5] Accordingly, I would conclude that Oneida's failure to raise its present claim as a counterclaim in the bankruptcy proceeding did not undermine the bankruptcy court's orders.
 
 
 54
 Thus, I conclude that Section 22(2) of the Restatement sets forth the applicable rule of claim preclusion and that application of that rule to the facts of this case requires a conclusion that Oneida's claim is not precluded.
 
 II.
 
 55
 I would also reject the equitable and judicial estoppel theories on which the court places express reliance in foreclosing Oneida's claims. The court's reasoning, in short, is that Oneida forfeited its claims when it did not list them in its disclosures pursuant to Sec. 521, which requires every debtor to file a schedule of assets, and Sec. 1125, which imposes a similar obligation on a debtor soliciting acceptance of a reorganization plan. In my view, the court's analysis and the remedy it endorses ignore the purposes of the Code's disclosure requirements.
 
 
 56
 The Code's disclosure requirements are intended to protect those creditors whom a debtor's failure to disclose hidden assets would prejudice. A fortiori, a court's response to nondisclosure should do likewise. Not only does the court fail to safeguard the interests of Oneida's unsecured creditors, but it effectively penalizes them by foreclosing the prosecution of claims against the bank that would, if successful, result in a substantial enhancement of the estate and in their receiving more than the approximately thirty cents on the dollar for which they have been forced to settle. The only real winner in the case as decided is the bank, whom the court has relieved of the responsibility of justifying its allegedly improper behavior.
 
 
 57
 The court does not explain why it finds more even-handed alternatives inadequate. I see no reason, for example, why we could not allow this suit to proceed and simply make reference to the fact that the bankruptcy court has jurisdiction to entertain motions to amend or rescind the debtor's reorganization plan if such motions are brought by unsecured creditors who feel that Oneida's nondisclosure has prejudiced them.[6] See Sec. 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."). The availability of such a course of action would in most cases adequately deter nondisclosure. Section 1141(d)(3), which authorizes denial of discharge under certain conditions, provides additional deterrence, as does 18 U.S.C. Sec. 152 which makes it a crime, among other things, to "knowingly and fraudulently [conceal] ... any property belonging to the estate of a debtor." See e.g. 3 Collier on Bankruptcy p 521.02 (15th ed. 1986) (suggesting that concealment of an asset is subject to denial of discharge or criminal sanctions pursuant to 18 U.S.C. Sec. 152).
 
 
 58
 Moreover, this case stands in marked contrast to the circumstances under which estoppel has traditionally been invoked. Here, Oneida never represented that it would not press a claim against the bank. On the contrary, starting with its initial disclosure statement and continuing throughout the Chapter 11 proceedings, Oneida made clear that it thought it had been mistreated by the bank.[7] Having announced its displeasure at the outset, Oneida actively preserved its right to file claims. When the bank sought a general release in connection with the order establishing the extent and validity of its lien, for instance, Oneida's counsel wrote:
 
 
 59
 While we would have no objection to an amendment of the Order to, in effect, delete the handwritten portion of the Order which was included per Judge DeVito's direction, the Order proposed by you constitutes an omnibus release pertaining to the matters far beyond the issue of service charges. Unless the Order is modified to pertain only to the issue of service charges, the matter cannot be resolved ...
 
 
 60
 App. at 422. Oneida successfully secured exclusion of the release. Thereafter, Oneida's insistence on preserving any claims it might have never wavered, and culminated in Article XII of the reorganization plan itself:
 
 
 61
 All claims and causes of action in favor of [Oneida] not expressly released or terminated in accordance with the Plan are hereby preserved and may be prosecuted by [Oneida] or the Creditors' Committee after entry of the Confirmation Order.
 
 
 62
 App. at 146.
 
 
 63
 Thus, Oneida never assumed a position which its current actions repudiate. Compare Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953); In re Galerie Des Monnaies of Geneva Ltd., 55 B.R. 253 (Bankr.S.D.N.Y.1985), aff'd 62 B.R. 224 (S.D.N.Y.1986) (debtor had affirmatively stated a belief it did not have preference actions, and would have been the only beneficiary of actions ultimately brought after bankruptcy). Nor has the bank pointed to any persuasive evidence that it was prejudiced by anything Oneida did or did not do during the bankruptcy proceeding.[8]
 
 
 64
 In sum, equitable and judicial estoppel are extraordinary remedies to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. Oneida's behavior was neither inconsistent nor inequitable. Accordingly, I believe that the court should not have applied estoppel doctrines to this case.
 
 III.
 
 65
 For the foregoing reasons, I would reverse the judgment of the district court.
 
 
 
 [1]
 After the present action was filed in state court, the plan was modified to order that one-third of the net recovery that Oneida might obtain against the bank in this lawsuit be paid to the creditors
 
 
 [2]
 By order of June 24, 1987, the district court granted Singleton's motion to dismiss the third party complaint
 
 
 [3]
 The bank captioned its motion as, alternatively, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and/or Rule 12(c). The district court granted the bank's motion without comment as to which procedural rule it applied
 Oneida argues that the motion should have been handled as a motion requesting summary judgment and asserts that the presence of unresolved factual matters mandate that the order entered in the bank's favor be reversed.
 The district court characterized this argument as "irrelevant" since its decision was based on the legal question of the preclusive effect of the bankruptcy proceeding. The court then determined that no discovery was necessary for Oneida to defend against the bank's res judicata argument.
 In deciding the merits of Oneida's argument, we are unable to discern which precise facts the district court relied upon, i.e., what comprised "the current record." Under either motion, however, the district court had to examine the record of the prior bankruptcy proceeding. Indeed, the district court was entitled to take judicial notice of these matters in rendering its decision, regardless of the motion employed. Green v. Warden, U.S. Penitentiary, 699 F.2d 364 (7th Cir.1983); 2A J. Moore, J. Desha Lucas and G. Grotheer, Moore's Federal Practice p 12.15 (2d ed. 1987).
 Review of the legal component for either of the motions is identical--since the material facts here are the undisputed historical facts--we determine, as did the district court, whether the moving party, the bank, is entitled to judgment as a matter of law.
 
 
 [4]
 See supra note 1
 
 
 [5]
 This is the identical argument raised in both Oneida's contest of the district court's application of the preclusion principle of res judicata to this matter and Oneida's rationale for not raising its claim in the bankruptcy forum
 In reaching its decision to apply res judicata here, the district court indicated what we described in United States v. Athlone Industries, Inc., 746 F.2d 977 (3d Cir.1984), as, "a predisposition towards taking a broad view of what constitutes identity of causes of action--'an essential similarity of the underlying events giving rise to the various legal claims.' " Id. at 984, citing Davis v. United States Steel Supply, 688 F.2d 166, 1971 (3d Cir.1982) (in banc), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). Without further elaboration, the district court then found that the current claims for breach of contract and misrepresentation were part of the same cause of action before the bankruptcy court, thereby barring further litigation of the present suit.
 Because the matter here originated as a bankruptcy petition and was adjudicated in a format peculiar to bankruptcy matters, comparison of the two actions is not susceptible to the four-step analysis outlined in Athlone. Rather, we scrutinize the totality of the circumstances in each action and then determine whether the primary test of Athlone, i.e., essential similarity in the underlying events, has been satisfied. Since it is Oneida's threshold allegation that the bank's activity in connection with the lending agreements was the catalyst to Oneida's filing a Chapter 11 petition, we are unpersuaded by Oneida's current position that the two actions represent unrelated events. In any event, because the concept of equitable estoppel in relation to the debtor's duty of disclosure is dispositive in this matter, we need not further address this issue.
 
 
 [1]
 Rule 13(a) states that: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurence that is the subject matter of the opposing party's claim ..."
 
 
 [2]
 The absence of such a rule is consistent with Sec. 553, the Code's setoff provision. Section 553 permits a creditor to exercise a right of setoff, but does not require the creditor to do so. The absence of such a rule also is consistent with our recent decision in Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47 (3d Cir.1988), where we held that a debtor who believes that an involuntary bankruptcy proceeding was filed against it in bad faith may pursue its remedies after bankruptcy, rather than relying exclusively on the relief provided by the Code in Sec. 303(i)(2)
 
 
 [3]
 Article XII is quoted, infra, at 423
 
 
 [4]
 In two cases cited by the court, Southmark Properties v. Charles House Corp., 742 F.2d 862, 871 (5th Cir.1984) and County Fuel Co. v. Equitable Bank Corp., 832 F.2d 290 (4th Cir.1987), courts of appeal held that claims were barred by claim preclusion in contexts where granting relief would have been inconsistent with findings of fact or conclusions of law supporting the judgment in a prior case or would have effectively rescinded relief granted in a prior case. Both holdings are supported by the principle set forth in Sec. 22(2)(b). In Southmark, the debtor sought to collaterally attack an order authorizing and confirming a sale of property to the debtor's mortgagee. In County Fuel Co., the debtor attempted to raise claims that, had they been successfully raised when the creditor moved for removal of the automatic stay, would have caused the court to reject the motion
 
 
 [5]
 There is not even a significant overlap of the evidence crucial to the motions decided in the bankruptcy court and the evidence necessary to an analysis of Oneida's current claims. The bankruptcy court's determinations required consideration of the credit agreement, the value of the lien on Oneida's property and accounts receivable, and the question whether the bank properly perfected its liens. Oneida's current claims on the other hand, would necessitate investigation of the bank's behavior immediately prior to Oneida's filing in Chapter 11. With the exception of the credit agreement itself, the evidence adduced in the bankruptcy court would likely be irrelevant to this investigation
 
 
 [6]
 At oral argument, we were advised that the Creditor's Committee had concurred in Oneida's decision to pursue its claims against the bank and that an application had been made to the bankruptcy court for a plan amendment that would provide for creditor participation in any recovery
 
 
 [7]
 Oneida's disclosure statement charged the bank with:
 unilaterally with[drawing] Four Hundred Fifty Thousand Dollars ($450,000) from the Debtor's operating account to be applied towards satisfaction of the Dorn's settlement
 and claimed that
 Said overdraft caused an immediate overdraft in the Debtor's account, which became a chronic situation until the filing of the bankruptcy proceedings.
 App. at 109.
 
 
 [8]
 The court maintains that, had the bank known about Oneida's claims, it might not have entered into a stipulation as to the extent and validity of its lien, or voted for confirmation. I find it difficult to believe the bank was prejudiced in these respects, when undisputed evidence indicates that the bank was essentially paid in full by Oneida's plan. The bank's consent to the use of some of its cash collateral came prior to the filing of Oneida's statements of assets and liabilities and its disclosure statement and could not have been influenced thereby