RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0338p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARK A. EUBANKS; TERI LYNN EUBANKS,
                    *Plaintiffs-Appellants,*

    *v.*

CBSK FINANCIAL GROUP, INC., d/b/a AM. HOME LOANS,
                    *Defendant-Appellee.*

No. 02-5902

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 02-00186—Thomas B. Russell, District Judge.

Argued: April 23, 2004

Decided and Filed: October 1, 2004

Before: DAUGHTREY and CLAY, Circuit Judges; McCALLA, District Judge.[*]

---

### COUNSEL

**ARGUED:** Julia B. Barry, Louisville, Kentucky, for Appellants. Richard B. Warne, WYATT, TARRANT & COMBS, Lexington, Kentucky, for Appellee. **ON BRIEF:** Julia B. Barry, Louisville, Kentucky, for Appellants. Palmer G. Vance II, STOLL, KEENON & PARK, Lexington, Kentucky, for Appellee.

CLAY, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. McCALLA, D. J. (pp. 6-7), delivered a separate dissenting opinion.

---

### OPINION

---

CLAY, Circuit Judge. Plaintiffs, Mark A. Eubanks and Teri Lynn Eubanks, appeal from the district court's judgment granting Defendant, CBSK Financial Group, Inc.'s, motion to dismiss, by way of judicial estoppel, against Plaintiffs' lender-liability claim alleging a breach of contract, contractual bad faith, tortious interference with contract, negligent misrepresentation, constructive fraud, negligent supervision, breach of fiduciary duty, and intentional infliction of emotional distress. The district court held Plaintiffs were judicially estopped from pursuing a claim which they failed to disclose in a prior bankruptcy proceeding. Because this Court considers reasons of mistake and inadvertence, as well as an absence of bad faith, in

---

[*] The Honorable Jon Phipps McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

determining judicial estoppel, we **REVERSE** the district court's decision  and **REMAND** for further proceedings.

## I.

### BACKGROUND

On January 9, 1998, Plaintiffs applied for a consolidation loan in the amount of $50,000 from Defendant, intended to be used to settle Plaintiffs' outstanding debt. The loan document contained language stating: "[t]he lender, its agent, successors and assigns will rely on the information contained in the application and I/We have a continuing obligation to amend and/or supplement the information provided in the application if any of the material facts which I/We represented herein should change prior to closing." Mark Eubanks subsequently changed jobs on February 2, 1998, taking a position providing a smaller base salary, but added bonus incentives. After Plaintiffs' loan was approved, Defendant re-produced for Plaintiffs copies of checks made out to Plaintiffs' various creditors and then mailed those checks to the creditors on February 14, 1998. On February 16, 1998, Plaintiffs were notified that Defendant would place a stop on all checks it had issued to Plaintiffs' creditors and cancel the loan, because of Plaintiffs' changed employment. Plaintiffs' attorney thereafter began correspondence with Defendant demanding that the loan be reinstated, and threatening a potential suit.

The loan cancellation forced Plaintiffs into bankruptcy proceedings, resulting in them filing a Chapter 7 petition on July 17, 1998. The initial bankruptcy filing omitted Defendant from the schedule as a creditor or potential claimant. On August 18, 1998, at a meeting of creditors, Plaintiffs orally informed the Trustee, J. Baxter Schilling, of the lender-liability claim Plaintiffs were in the process of filing against Defendant. The Trustee orally instructed Plaintiffs' counsel to forward to him all documents regarding the claim. The same day, the Trustee forwarded a letter to Plaintiffs memorializing his request for all documents regarding the claim, which Plaintiffs forwarded to the Trustee two days later.

On October 20, 1998, the bankruptcy court entered a "Discharge of Debtor" on Plaintiffs' Chapter 7 claim. Plaintiffs claim they contacted the Trustee several times over the next several months to inquire as to the status of their claim against Defendant, and as to whether the Trustee intended to pursue the claim on behalf of the estate; however, they received no definitive answer.

On March 5, 1999, Plaintiffs amended their schedules in the bankruptcy matter to include Defendant as a creditor on schedule F; they claim that Plaintiffs' counsel inadvertently failed to amend their schedules to include Defendant as a claim of potential assets on their schedule B. On September 23, 1999, Plaintiffs moved the court to set a status conference date regarding Plaintiffs' lender-liability claim against Defendant, which was then set for November 18, 1999. On November 2, 1999, however, Trustee Schilling filed a "Report of No Distribution" that stated there was no property available for creditor distribution and the debtor's estate was fully administered. Therefore, on November 19, 1999, the court remanded as moot "the status hearing relative to the Trustee's decision whether to pursue a potential lawsuit against [Defendant]," since the Trustee's statement and Report of No Distribution was filed. The Plaintiffs' Final Decree for their Chapter 7 action was issued on December 2, 1999.

Four days later, on December 6, 1999, Plaintiffs moved to reopen the bankruptcy action to resolve a previous disability claim Plaintiff Mark Eubanks had against a former employer. On March 15, 2000, the bankruptcy court issued a "Notice of Last Day to File Claims" form, which indicated that "assets exist in this case from which unsecured creditors may receive a dividend."

On August 14, 2000, Plaintiffs filed a complaint in the Circuit Court of Jefferson County, Kentucky against Defendant. Defendant removed the action to the district court under 28 U.S.C. § 1452(a) pursuant to the court's bankruptcy jurisdiction under 28 U.S.C. §1334, and pursuant to 28 U.S.C. § 1441 (a) based on the diversity of citizenship of the parties under 28 U.S.C. §1332. Subsequent to removal, Defendant filed

a motion to dismiss on September 13, 2000. A hearing regarding the motion occurred on October 13, 2000, after which the bankruptcy court issued an order on October 17, 2000, directing the Trustee to file a Motion to Abandon, stating that when the motion was received, the bankruptcy court would remand Plaintiffs' civil claim back to state court. Plaintiffs' counsel filed another motion for a status conference, citing the Trustee's unwillingness to file the Motion to Abandon. On December 4, 2000, the court ordered the Trustee to file the Motion to Abandon. Nevertheless, on December 22, 2000, the Trustee filed an Application by Trustee to Employ Julia Barry [Plaintiffs' attorney] to Litigate Lender Liability Claim, along with her affidavit. On December 27, 2000, the court issued a Notice for Objections regarding the employ of Barry as litigant in the Plaintiffs' civil action against Defendant, and mailed a copy to all scheduled creditors and parties in interest.

On April 27, 2001, Plaintiffs moved to allow the Trustee to be substituted as Plaintiff in the legal liability civil action and to remand the matter back to state court, which the court allowed on May 1, 2001. Defendant then moved to alter, amend and vacate the May 1, 2001 Order of Substitution and Remand. After a hearing on Defendant's motion, the court on December 3, 2001 issued an order which vacated the Order of Substitution and Remand, and continued to consider Defendant's motion to dismiss.

Plaintiffs filed an amendment to their original bankruptcy petition, on November 20, 2001, to add the claim against Defendant to their bankruptcy schedule B, and, Defendant responded with a motion to strike. On January 29, 2002, the bankruptcy court entered the Trustee's Final Report, which declared Plaintiffs' lender-liability claim fully administered and fully abandoned. On June 10, 2002, the district court granted Defendant's motion to dismiss, on grounds of judicial estoppel. Plaintiffs then filed this timely appeal.

## II.

## DISCUSSION

This Court reviews *de novo* a motion to dismiss under FED. R. CIV. PROC. 12(b)(6). *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *see also Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The Court is required to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle plaintiff to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied*, 498 U.S. 867 (1990). The Court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971) (the court is "required to accept only well-pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts"). Additionally, we review a district court's application of judicial estoppel *de novo*. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Judicial estoppel is an "equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id*. Judicial estoppel, however, should be applied with caution to "avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Id*.

Defendant argued in its Motion to Dismiss before the district court that Plaintiffs should be precluded from pursuing this litigation against Defendant because of Plaintiffs' failure to include the potential claim

against Defendant as a potential asset in its previous bankruptcy adjudication, thus warranting judicial estoppel. Since a debtor has an affirmative duty to disclose all of its assets to the bankruptcy court, under 11 U.S.C. §521(1), Defendant argues Plaintiffs' failure to include Defendant in their bankruptcy schedule constitutes Plaintiffs' intention to benefit from this contrary argument in the current litigation. Plaintiffs, however, have evidenced no motive or intention to conceal the potential claim since Plaintiffs actually made numerous attempts through their counsel to advise the court and the Trustee of their claim.

This Court has previously dealt with the issue as to whether one's failure to disclose an asset in a previous bankruptcy proceeding is sufficient enough to justify asserting that such an omission was the "position" of the party in the previous proceeding. *Browning*, 283 F.3d at 775. In *Browning*, we looked to our sister circuits, including the Third Circuit's *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988), for guidance. *Id.* There, the Third Circuit held, and Defendant in the instant action would agree, that the debtor's post-petition bankruptcy claim against a bank was precluded by judicial estoppel because the debtor failed to disclose the claim in the prior bankruptcy proceeding. *Id.* at 419. This Court also looked to *Oneida* in our analysis in *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 474 (6th Cir. 1988), where we agreed that "statements of omissions by a debtor in a disclosure statement [are] sufficient for a finding of judicial estoppel."

Nevertheless, in *Browning* we found the very limiting language in *Reynolds*, which would allow an "omission" by a debtor to support a finding of judicial estoppel, to be merely dicta and, therefore, not binding. 283 F.3d at 775. Before *Browning*, this Court had not dealt with the issue of whether bad faith or an attempt to mislead the court was necessary to apply the doctrine of judicial estoppel; however, our sister circuits have held the application of judicial estoppel to be inappropriate when such omissions are the result of mere mistakes or inadvertent conduct. *Id.* (citing *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196-97 (4th Cir. 1998); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997)); *see also Ryan Operations v. Santiam-Midwest*, 81 F.3d 355, 362 (6th Cir. 1996) (holding the application of judicial estoppel would be inappropriate because there was no evidence Plaintiff acted in bad faith).

There is record evidence in the instant case that Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form. Plaintiffs' counsel and the Trustee were in contact, with respect to the documentation regarding the claim against Defendant, prior to the filing of the Trustee's Final Report. When Plaintiffs' counsel could not confirm whether or not the Trustee intended to reconcile the civil claim through the bankruptcy proceeding, Plaintiffs attempted to resolve the issue through a court conference, which was eventually cancelled due to the filing of the Trustee's Final Report.

The facts before this Court are more closely analogous to cases which have held the application of judicial estoppel to be an inappropriate resolution, rather than a necessary judicial measure to protect the court's interest. As we held in *Browning*, by adopting the Fifth Circuit's analysis in *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), regarding when a debtor's omission might be inadvertent – such as where a debtor lacks the knowledge of the factual basis of the undisclosed claim or where the debtor has no motive for concealment – finding Plaintiffs' actions as cause for judicial estoppel would be equally as inappropriate. 283 F.3d at 775.[1]

---

[1] There is evidence here that Plaintiffs did not conceal this claim against Defendant up until the filing of the civil suit, although Defendant argues that the mere mention of the possible claim to the Trustee in a meeting is not sufficient to overcome the protections of judicial estoppel. Nevertheless, various courts in other jurisdictions have held that a trustee's knowledge of the claim precludes the application of judicial estoppel since the plaintiff was obviously not trying to defraud the court if they placed the trustee on notice. *Period Homes, Ltd. v. Wallick*, 569 S.E.2d 502 (Ga. 2002) (where debtor did not mislead bankruptcy court about existence of claim since debtor informed trustee of claim, debtor's position with respect to claim was not clearly inconsistent with his position during the pendency of bankruptcy and judicial estoppel should not apply); *see also Sports Page, Inc., v. First Union Management, Inc.*, 438 N.W.2d 428 (Minn. Ct. App. 1989) (because trustee in athletic store bankruptcy had notice of

The record established that Plaintiffs amended the bankruptcy schedules once, and attempted to amend it a second time, to finally place Defendant on the schedule as a creditor and potential asset. Defendant, however, provides no additional evidence that Plaintiffs demonstrated fraudulent intentions towards the court. Additionally, the record establishes that Plaintiffs put the court and the Trustee on notice through correspondence, motions, and status conference requests, thus supporting the argument that the claim's omission on the schedules was merely inadvertent, particularly since Plaintiffs' desire to pursue a liability claim against Defendant was a fact known by all parties involved.[2]

Because this Court has previously held that evidence of an inadvertent omission of a claim in a previous bankruptcy proceeding is a reasonable and appropriate factor to consider when analyzing judicial estoppel's applicability, the Court **REVERSES** the district court's decision barring Plaintiffs' civil claim as judicially estopped, and **REMANDS** for further proceedings consistent with this opinion.

---

store's claim against its mall landlord, the court held judicial estoppel did not prevent the store from subsequently litigating the case).

[2] The dissent's position, in analyzing the facts set forth in this case with the test set forth in *Browning* to discern whether a plaintiff's omission was in fact inadvertent, relies on an assumption that there was a concealed or unknown contrary position previously taken by Plaintiffs. 283 F.3d at 775. Here, the majority has set forth in detail the steps Plaintiffs took to apprise both the Trustee and the court of the anticipated civil action against Defendant, so as to not conceal the claim even though it was inadvertently omitted on the bankruptcy schedule. Not only did Plaintiffs' constant affirmative actions clearly establish a desire to apprise the court of the pending claim, but such a sequence of action actually runs contrary to the conduct needed to establish a motive to conceal.

---

**DISSENT**

---

JON P. McCALLA, District Judge, dissenting. I respectfully disagree with the majority's conclusion. Based on the framework articulated by this court in *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002), I believe the district court correctly dismissed Plaintiffs' claim.

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Id.* (citing *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1114, 1218 (6th Cir. 1990)) (internal citations omitted). In *Browning,* this court adopted the approach employed by the Fifth Circuit in *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), to identify those "circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be inadvertent," such that judicial estoppel would be inapplicable. *Browning*, 283 F.3d at 776. Specifically, this Court reasoned that situations where the debtor either (1) lacks knowledge of the factual basis for the undisclosed claims, or (2) has no motive for concealment ought to fall outside the scope of the judicial estoppel doctrine. *Id.*

Similar to the plaintiffs in *Browning*, Plaintiffs in this case were well-aware of the factual basis for the undisclosed claims; therefore, the only manner in which Plaintiffs can avoid judicial estoppel is to show that they had no motive for concealment. One factor courts within this Circuit have considered when ascertaining a debtor's motive to conceal is to inquire whether the debtor would enjoy a windfall as a result of the belated filing. *See, e.g., id.* ("[Plaintiff] will thus receive no windfall as a result of its failure to disclose its claims, because only Nationwide's creditors will receive the distribution of any recovery . . . This lack of motive for concealment leads to the conclusion that [Plaintiff's] failure to disclose was, without any evidence to the contrary, inadvertent."); *McClain v. Coverdell & Co.,* 272 F.Supp.2d 631, 641-42 ( E.D. Mich. 2003) (finding judicial estoppel inapplicable because the failure to disclose the account did not result in a windfall given that the amount in question was small enough that it would have qualified as a personal exemption). Contrary to the situation in *Browning*—where the creditors would have received the distribution of any recovery—the record in this case indicates that Plaintiffs would enjoy a windfall if allowed to pursue their claim against Defendants after the dismissal of their Chapter 7 claim.

Indeed, Plaintiffs themselves confirmed their intention to retain the claim against Defendant as part of their personal property. In a brief filed with the Bankruptcy Court, Plaintiffs asserted that should the court reopen the case and allow the amendment to be filed, the result would be that the claim would become the property of the debtors, rather than the estate, because the Trustee had abandoned the claim. (Pls.' Brief March 25, 2002 at 4.) This statement unquestionably belies Plaintiffs' claim of inadvertence.[1] This type of blatant attempt to shield an award from the creditors is precisely the type of conduct that judicial estoppel was designed to prevent. As the Fifth Circuit explained:

> [T]he rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.

---

[1] During oral argument, Plaintiffs' counsel vigorously represented to the panel that her repeated failures to include the claim against Defendant in the appropriate bankruptcy schedule were all inadvertent.

*In re Coastal Plains, Inc.*, 179 F.3d at 208 (citing *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) (emphasis in original).

In this case, not only did Plaintiffs attempt to benefit from their alleged omission by depriving their creditors of the benefit of any claim against Defendant, but also they allowed the Bankruptcy Court to rely on the representation of the Trustee that no property was available for distribution. Plaintiffs never appealed the final decree of the Bankruptcy Court denying their request for a hearing as moot or attempted to reopen the case—as they did with the claims against Mr. Eubanks' employer. Instead, they silently waited on the sidelines for the Bankruptcy Court to discharge their debt, before pursuing their claim in state court.

Contrary to the majority, I believe that Plaintiffs' actions indicate that the failure to include the claims against Defendants in the bankruptcy schedule was not mere inadvertence or mistake as required under *Browning*. Therefore, I would affirm the district court's decision dismissing Plaintiffs' claim as barred by judicial estoppel.