Toni SWANIGAN, Plaintiff,

v.

NORTHWEST AIRLINES, INC. and International Association of Machinists & Aerospace Workers, Defendants.

Civil Action No. 2:09-cv-02559-BBD-dkv.

United States District Court, W.D. Tennessee, Western Division.

June 9, 2010.

918

Ralph T. Gibson, Bateman Gibson & Childers, Memphis, TN, for Plaintiff.

James R. Mulroy, II, Kelly S. Gooch, Jackson Lewis LLP, Memphis, TN, for Northwest Airlines, Inc.

Angela C. Serranzana, Carmen R. Parcelli, Guerrieri Edmond Clayman & Bartos, PC, Washington, DC, for International Association of Machinists & Aerospace Workers.

## ORDER GRANTING DEFENDANT NORTHWEST AIRLINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Defendant Northwest Airlines, Inc.'s ("Northwest Airlines") motion to dismiss filed February 5, 2010. (D.E.# 15.) On April 16, 2010, after requesting and receiving two extensions of time to respond, Plaintiff Toni Swanigan ("Plaintiff") filed a response in opposition to the motion to dismiss. After requesting and receiving leave to file a reply, Northwest Airlines filed a reply to Plaintiff's response on May 3, 2010 and a supplemental reply on May 12, 2010. For the reasons stated herein, the Court converts Northwest Airlines's motion to dismiss into a motion for summary judgment and **GRANTS** summary judgment in favor of Northwest Airlines.

## I. FACTS

On January 19, 2006, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee (Ex. A to Def.'s Mot. to Dismiss Pl.'s Compl.), which the bankruptcy court later dismissed on February 18, 2009 (Ex. B to Def.'s Mot. to Dismiss Pl.'s Compl.). On November 7, 2008, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") against Defendants Northwest Airlines and International Association of Machinists and Aerospace Workers, alleging discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). (Ex. A to Compl.) On February 26, 2009, Plaintiff filed a second voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee. (Ex. C to Def.'s Mot. to Dismiss Pl.'s Compl.) On June 1, 2009, Plaintiff received her right to sue letter from the EEOC. (Compl.¶ 13.) On June 12, 2009, the bankruptcy court entered an order confirming Plaintiff's bankruptcy plan. (Ex. G to Def.'s Mot. to Dismiss Pl.'s Compl.) On August 31, 2009, a little more than two months after the bankruptcy court approved Plaintiff's plan, Plaintiff filed the instant complaint in this Court alleging discrimination and retaliation in violation of Title VII. Subsequently, on December 21, 2009, the bankruptcy court dismissed Plaintiff's second bankruptcy petition for failure to pay but later granted Plaintiff's motion to reinstate the claims. (Ex. F to Def.'s Mot. to Dismiss Pl.'s Compl.) On February 22, 2010, Plaintiff filed a Motion to Forgive Missed Payments and to Include Post–Petition Mortgage Arrearage. (Ex. D to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss.)

On February 5, 2010, Northwest Airlines moved to dismiss the present case based on Plaintiff's failure to disclose her Title VII claims in her bankruptcy proceedings. On April 12, 2010, Plaintiff filed

an amended statement of financial affairs in her bankruptcy case so as to include this lawsuit. (Ex. E to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss.) After requesting and receiving two extensions of time to respond to the motion to dismiss, Plaintiff filed a response to the motion on April 16, 2010. Plaintiff filed an amended Schedule B in the bankruptcy court on April 21, 2010, which listed the instant cause of action under "Contingent and noncontingent interests in estate of a decedent ..." and valued the lawsuit at $1,000. (Ex. F to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss.) On April 21, 2010, the bankruptcy court issued an order increasing the percentage paid to Plaintiff's unsecured creditors to one hundred percent (100%).[1] (Ex. G to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss.)

## II. LEGAL STANDARD

### a. Federal Rule of Civil Procedure 12(b)(6)

 Northwest Airlines brings its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a defendant may bring a motion to dismiss for failure to state a claim, which only tests whether a cognizable claim has been pled. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To determine whether a motion to dismiss should be granted, the court must examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and it must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Scheid*, 859 F.2d at 436–37. A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Twombly*, 550 U.S. at 561, 127 S.Ct. 1955 (internal quotation marks and brackets omitted).

 In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827 ("Rule 12(b)(6) does not countenance [ ] dismissals based on a judge's disbelief of a complaint's factual allegations."); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). However, only well-pleaded facts must be taken as true, and the court need not accept legal conclusions or unwarranted factual inferences. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir.1998). When a complaint does adequately state a claim, it may not

---

1. Neither party submitted evidence as to the percentage the previous payment plan required Plaintiff to pay her unsecured creditors.

be dismissed based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955.

### b. Conversion of Motion to Dismiss into Motion for Summary Judgment

■ In this case, although Northwest Airlines has styled its motion as a motion to dismiss, the parties have relied upon documents outside of the pleadings in support of their respective positions. In support of its motion to dismiss, Northwest Airlines submitted various documents relating to Plaintiff's bankruptcy proceedings, which were outside of the pleadings, but which the Court could consider without converting the motion to dismiss to a motion for summary judgment because the documents are public record. *See Bohanan v. Bridgestone/Firestone North American Tire, LLC,* No. 3:06cv122, 2007 WL 1091209, at *2, 2007 U.S. Dist. LEXIS 26615, at *6 (M.D.Tenn. Apr. 10, 2007) (holding that "[b]ecause the filings and the orders entered in the bankruptcy action are public records, the Court may consider them without converting" the motion to dismiss) (citing *Signature Combs, Inc. v. United States,* 253 F.Supp.2d 1028, 1041 n. 5 (W.D.Tenn.2003)). Plaintiff, however, in response to Northwest Airlines's motion, filed an affidavit, which Northwest Airlines addressed in its subsequent filings.

■ "If, on a motion under . . . [Fed. R.Civ.P. 12(b) or 12(c) ] . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). It is within the trial court's discretion to determine whether to convert a motion to dismiss into a motion for summary judgment. *Ball v. Union Carbide Corp.,* 385 F.3d 713,

719 (6th Cir.2004) (citation omitted). The court, however, in converting a motion to dismiss must take care to prevent prejudice or surprise to any party. *See Shelby County Health Care Corp. v. Southern Council of Indus. Workers,* 203 F.3d 926, 931 (6th Cir.2000); *see also* Fed.R.Civ.P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). "Whether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case." *Shelby County Health Care Corp.,* 203 F.3d at 931 (citation omitted); *see Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir.2001).

In this case, if the Court were to convert the motion to dismiss to a summary judgment motion, no party could claim surprise in light of Plaintiff's submission of material outside of the pleadings and Northwest Airlines's discussion of that material in its filings. The Court further notes that neither party has objected to the authenticity of the exhibits submitted or otherwise attempted to show that they are deficient. *Cf. Song v. City of Elyria,* 985 F.2d 840, 842 (6th Cir.1993) (noting that a party cannot claim to have been "surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion") (citation omitted). Therefore, because there is no danger of surprise or prejudice in considering material outside of the pleadings, the Court converts the pending motion to dismiss into a motion for summary judgment.

### c. Federal Rule of Civil Procedure 56

■ Summary judgment is proper "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

Northwest Airlines contends that the doctrine of judicial estoppel bars Plaintiff's suit because she did not disclose the existence of her Title VII claims in her schedule of assets in the bankruptcy court and then pursued those claims in the instant action without amending her bankruptcy schedules. Plaintiff argues that the application of the judicial estoppel doctrine would be inappropriate because her nondisclosure was inadvertent.

Pursuant to § 521 of the United States Bankruptcy Code, a debtor seeking bankruptcy protection must file a "schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs...." 11 U.S.C. § 521(1). Under this section, it is well-settled that a legal cause of action is an asset that must be listed. *See Lewis v. Weyerhaeuser Co.,* 141 Fed.Appx. 420, 424 (6th Cir.2005) (citing *Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 897 (6th Cir.2004)). "Moreover, the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Lewis,* 141 Fed.Appx. at 424 (quotation marks omit-

ted) (citing *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir.1999) (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D.Tex.1996))). "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *In re Coastal Plains, Inc.*, 179 F.3d at 208.

■■■ Judicial estoppel is an equitable doctrine that "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472 (6th Cir.1988) (citations omitted). The Supreme Court has enumerated three factors that courts should consider in deciding whether to apply the doctrine: (1) the party's later position must be clearly inconsistent with its earlier position; (2) the party must have succeeded in persuading a court to accept its prior position, suggesting that either the first or the second court was misled; and (3) there must be the potential for the party to derive an unfair advantage on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). In *Browning v. Levy*, 283 F.3d 761 (6th Cir.2002), the court focused on the first two factors, defining judicial estoppel as "bar[ring] a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." 283 F.3d at 775 (internal quotation marks omitted) (citing *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)).

■■■ Plaintiff has met the two factors identified in *Browning*. First, Plaintiff's pursuit of her Title VII claims is unquestionably contrary to the position asserted in her bankruptcy proceedings. It is undisputed that Plaintiff's bankruptcy petition, which she signed under penalty of perjury, and her supporting financial schedules do not include Plaintiff's then pending EEOC charge, despite Plaintiff's obligation to list "all suits and administrative proceedings to which [Plaintiff] is or was a party to within one year immediately preceding the filing of this bankruptcy case." (*See* Ex. C to Def.'s Mot. to Dismiss Pl.'s Compl. (emphasis in original omitted).) Further, it is undisputed that Plaintiff failed to disclose her lawsuit filed in this Court on August 31, 2009 shortly after the bankruptcy court approved her bankruptcy plan on June 12, 2009. (*See id.*; Ex. F to Def.'s Mot. to Dismiss Pl.'s Compl.) "[P]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis*, 141 Fed.Appx. at 425 (citing *Eubanks*, 385 F.3d at 898 and *Browning*, 283 F.3d at 775). Second, a bankruptcy court's confirmation of a debtor's bankruptcy plan adopts the debtor's statement that she had no potential causes of action. *Id.* (citing *Reynolds*, 861 F.2d at 473 and *De Leon v. Comcar Indus.*, 321 F.3d 1289, 1291 (11th Cir.2003)). Plaintiff does not dispute that she meets the *Browning* factors but instead asserts that she should not be judicially estopped because her failure to disclose her claims in the bankruptcy proceeding was inadvertent.

■■■ Judicial estoppel "is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Browning*, 283 F.3d at 776. A failure to disclose may be considered inadvertent where: (1) "the debtor lacks knowledge of the factual basis of the undisclosed claims" or (2) "the debtor has no motive for concealment." *Id.*; *see Best v.*

*Kroger Co.*, 339 B.R. 180, 184 (W.D.Tenn. 2006). In this case, based on the timing of Plaintiff's EEOC complaint, of her receipt of the right to sue letter from the EEOC, and of the filing of her suit in this Court, Plaintiff clearly had knowledge of the factual basis for her undisclosed Title VII claims at the time she filed her second bankruptcy petition and throughout its pendency. In fact, Plaintiff does not dispute that she had such knowledge. Rather, Plaintiff relies on *Best v. The Kroger Co.*, 339 B.R. 180 (W.D.Tenn.2006), and an affidavit from her current bankruptcy attorney to argue that she had no motive to conceal these claims. Plaintiff contends that because she will pay her creditors at one hundred percent (100%), she possessed no motive to conceal the claims she asserts in this case. (*See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s Compl.)

The present case, however, is distinguishable from *Best.* Analyzing the relevant law, the court in *Best* noted that "[w]hether [the plaintiff] ultimately benefitted from failing to disclose her sexual harassment claim as an asset . . . does not decisively show that she had no motive for concealment. 'It is always in a Chapter 13 petitioner's interest to minimize income and assets.'" *Id.* (quoting *Lewis*, 141 Fed.Appx. at 426.) In *Best*, not all of the plaintiff's claims that later formed the basis of her complaint were known to her at the time she filed her bankruptcy petition and or even at the time the bankruptcy court approved her plan. In contrast, Plaintiff in the instant case alleges discriminatory denials of promotions, retaliation, and other grievances, all of which had clearly occurred before Plaintiff filed her bankruptcy petition and certainly be-

fore the bankruptcy court approved her Chapter 13 plan. The facts are further distinguishable in that the *Best* plaintiffs amended their bankruptcy plan to pay their creditors at one hundred percent (100%) prior to the defendant's motion for summary judgment. In this case, the bankruptcy court entered an order "upon the request of the Debtor" to increase the percentage paid to Plaintiff's unsecured creditors to one hundred percent (100%) on April 21, 2010, after Northwest Airlines filed the instant motion.[2] (Ex. G to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Dismiss.) Such a timeline of events is factually distinguishable from *Best* in a meaningful way and suggests intentional concealment of the instant claims. By omitting the claims, Plaintiff could avoid including the funds in her bankruptcy estate and keep any proceeds from this cause of action. *See Tyler v. Federal Express Corp.*, 420 F.Supp.2d 849, 858 (W.D.Tenn.2005). Based on the facts of this case, the Court finds as a matter of law that Plaintiff had both knowledge of the claims and motive to conceal them.

Even though Plaintiff cannot show that her failure to disclose her claims was inadvertent, "the Sixth Circuit has recognized that 'constant' affirmative efforts taken by a plaintiff may demonstrate that an omission from the bankruptcy petition was in good faith and in all likelihood inadvertent." *White v. Wyndham Vacation Ownership, Inc.*, No. 3:08–CV–405, 2009 WL 1074800, at *6, 2009 U.S. Dist. LEXIS 33431, at *15 (E.D.Tenn. Apr. 21, 2009) (citing *Eubanks*, 385 F.3d at 899 n. 2.); *Lewis*, 141 Fed.Appx. at 426 ("Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does

---

**2.** The Court notes that this bankruptcy court order was entered after Plaintiff's bankruptcy attorney stated in his affidavit that Plaintiff "will pay 100% of all of her creditors, includ-

ing unsecured creditors." (Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Clim Madlock, Jr. ¶ 3.)

not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional. In such a case, the equitable principles governing judicial estoppels do not support its application.") In *Eubanks*, the court held that although the plaintiffs failed to disclose their cause of action in their bankruptcy proceedings, their omission was inadvertent because their "constant affirmative actions" clearly established a desire to apprise the court of the pending claims where the plaintiffs: (1) informed the bankruptcy trustee of their cause of action and forwarded to the trustee all of the documents regarding the claims; (2) contacted the trustee several times inquiring whether the trustee would pursue the claims on behalf of the bankruptcy estate; (3) amended the bankruptcy schedules once; (4) moved the bankruptcy court for a status conference regarding the claims; (5) moved to allow the trustee to be substituted as the plaintiff in their civil action; and (6) attempted to amend the bankruptcy schedules a second time. *Eubanks*, 385 F.3d at 895–97.

Unlike the plaintiffs in *Eubanks*, Plaintiff has not presented evidence of any affirmative efforts that she took to notify the bankruptcy court of this proceeding prior to the filing of the instant motion by Northwest Airlines. The timing of the events in this case supports a finding that Plaintiff acted intentionally and in bad faith. Only after Northwest Airlines filed the instant motion to dismiss did Plaintiff amend her bankruptcy schedules in April 2010, over one year after Plaintiff filed her bankruptcy petition, over ten months after the bankruptcy court confirmed Plaintiff's plan, and over seven months after initiating suit in this Court. Further, when Plaintiff did amend, the amendment misrepresented the nature of this case to the bankruptcy court. Pursuant to Federal Rule of Civil Procedure 26(a), Plaintiff disclosed in this case that she seeks back pay in the amount of $128,000, front pay in the amount of $1.6 million dollars, and unspecified damages for emotional pain and suffering, punitive damages, and prejudgment interest, as well as attorney's fees and costs. (Ex. B to Def.'s Supplemental Reply to Pl.'s Resp. to Mot. to Dismiss.) Plaintiff's amended Schedule B filed in the bankruptcy court on April 21, 2010, however, grossly undervalues the pending lawsuit at $1,000. (Ex. A to Def.'s Supplemental Reply to Pl.'s Resp. to Mot. to Dismiss.) The Court also notes that Plaintiff moved to amend her bankruptcy petition to include mortgage arrearages on February 22, 2010 (*see* Ex. D to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Dismiss), which evidences Plaintiff's awareness of her continuing obligation to amend her petition. Further, Plaintiff has offered no explanation for her failure to disclose her claims to the bankruptcy court or to amend her petition and/or schedules prior to the filing of the instant motion to dismiss. Considering the totality of the circumstances, the Court finds the application of judicial estoppel appropriate as a matter of law and grants Northwest Airlines's request to dismiss this case.

An application of judicial estoppel in this instance is not unduly harsh or inequitable because "the success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [a] [plaintiff] to backup, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets." *Tyler*, 420 F.Supp.2d at

859 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir.2002)).

## IV. CONCLUSION

In conclusion, the Court finds the application of the judicial estoppel doctrine to be appropriate in this instance. Plaintiff is estopped from asserting her Title VII claims due to her intentional omission of the claims asserted in this cause during her bankruptcy proceedings. Therefore, the Court **GRANTS** summary judgment in favor of Northwest Airlines. Judgment shall enter accordingly.