**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0531n.06

**No. 17-4241**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 24, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PETER NEWMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| UNIVERSITY OF DAYTON, et al. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees. | ) | |
| | ) | |

**BEFORE: GUY, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Relying on the doctrine of judicial estoppel, the district court dismissed plaintiff-appellant Peter Newman's claims against his former employer and others because Newman had failed to disclose both the existence of those claims and the income from his University employment in his bankruptcy proceeding. On appeal, Newman argues that the district court erroneously found that his omissions were not the result of mistake or inadvertence and asks us to reverse the dismissal of his claims. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

Because the single issue before us is whether the district court erred in dismissing Newman's complaint under the doctrine of judicial estoppel, we set out the procedural and factual background of this action and Newman's bankruptcy proceeding only insofar as relevant to that issue.

**A. Newman's Bankruptcy Proceeding**

On October 8, 2014, Newman filed a Chapter 13 bankruptcy petition with the United States Bankruptcy Court for the Southern District of Ohio. (*See In re Peter K. Newman and Susan B. Newman*, Case No. 3:14-bk-33622, Doc. 1 (Bankr. S.D. Ohio).) Under a section of the petition titled "Your Income," Newman listed his occupation as "disabled" and his income as $0, stated that he did not expect his income to increase the following year, and did not list any employment in response to an instruction to "[i]nclude any part-time, seasonal, or self-employed work." (BK. Doc. 1 at 23.) On October 27, 2014, Newman filed a bankruptcy plan (Plan) in which he acknowledged his responsibility to "keep the Trustee informed as to any change in status of any claim . . . to which [Newman] may be entitled." (BK Doc. 12 at 8.)

Between January 23, 2015, and December 22, 2016, Newman was employed as an adjunct professor at the University of Dayton (University), where he taught courses in the School of Law, MBA Program, and School of Business Administration and earned a total of $38,762 from his work for the University.

Newman filed an amended Plan on February 5, 2015, in which he again listed his occupation as "disabled" and failed to disclose his University employment or income. Newman filed another amended Plan on February 26, 2015, which again made no reference to his employment with the University.

The Bankruptcy Court confirmed Newman's Plan on April 15, 2015, in an order requiring Newman to "notify the Chapter 13 Trustee in writing if [his] place of employment changes and the name and address of the new employer." (BK Doc. 75 at 2.) For reasons that are irrelevant here, Newman moved to modify the Plan on May 20, 2015; again, Newman did not disclose his University employment or income. The Bankruptcy Court granted the request to modify on

October 16, 2015. On July 14, 2017, the Trustee filed a motion to dismiss the bankruptcy proceeding on the basis that Newman had failed to turn over copies of his 2016 tax returns or tax refund as required. Although the record is not entirely clear on this point, Newman appears to have provided the Trustee with his 2016 tax returns after the Trustee filed its motion.

On August 7, 2017—after defendants in the instant suit had filed their motion to dismiss—Newman's bankruptcy counsel advised the Trustee that Newman was the plaintiff in a pending employment-discrimination lawsuit, and on August 22, 2017, Newman filed an Amended Schedule that disclosed his claims against defendants in the instant case.

### B. The Instant Suit

On September 16, 2016, Newman filed an internal discrimination and harassment complaint against one of his students at the University, alleging that she had disrespected him based on his age, gender, and race. On October 14, 2016, the University notified Newman that he would not be scheduled to teach classes for the 2017 spring semester. Plaintiff met with administrators during November and December 2016, and the University determined that his complaint was without merit and declined to mediate his claims. Newman subsequently filed an administrative complaint with the Department of Education Office of Civil Rights, an employment-discrimination charge with the Equal Employment Opportunity Commission, and an employment-discrimination claim with the Ohio Civil Rights Commission.

Newman filed the instant suit on May 19, 2017. Newman's complaint advanced thirteen claims under federal and Ohio law, all of which are premised on allegedly unlawful actions taken by the University or the individual defendants in connection with Newman's employment. On July 14, 2017, defendants filed a motion to dismiss the complaint, arguing that Newman "is judicially estopped from asserting the claims and seeking the damages at issue in this case"

because, although "[a]ll of Newman's claims are related to his employment as an adjunct instructor at the University," Newman never disclosed as assets in his bankruptcy proceeding "the existence of the claims at issue in this action as contingent and unliquidated claims" or "his employment with or earnings from the University." (R. 18, PID 70–71.)

Newman and his bankruptcy counsel submitted affidavits in opposition to defendants' motion. Newman's affidavit stated that his "original bankruptcy lawyer" advised him that he was not required to disclose his income "unless [the University] gave [him] a commitment to teach classes on an ongoing basis." (R. 26-1, PID 212.) The affidavit further stated that, although Newman "did not report [his University] earnings, the Trustee was aware of [his earnings] because" he had provided his "2014, 2015, and 2016 tax returns." (*Id.* at PID 212.) Newman further stated that his "failure to disclose [his] discrimination lawsuit resulted from mistake or inadvertence" because he "mistakenly thought that [he] did not have to disclose [his] lawsuit until [he] collected damages." (*Id.*) Newman's bankruptcy attorney—a different attorney than the one who allegedly advised Newman that he need not disclose his income—filed an affidavit stating that he rectified the omissions in the bankruptcy filings after defendants filed their motion to dismiss in the instant suit. The affidavit makes no assertions concerning the period of time prior to the filing of defendants' motion to dismiss.

## C. The District Court Grants Defendants' Motion to Dismiss

On October 31, 2017, the district court granted defendants' motion to dismiss on the basis that the doctrine of judicial estoppel barred Newman from advancing any of the claims in the instant suit. The court recognized that defendants' motion relied on Newman's bankruptcy proceedings and, therefore, went beyond the pleadings in the instant case, but found that those documents "are public records which may be considered by the Court in ruling on a Rule 12(b)(6)

motion to dismiss." (R. 38, PID 330.) However, because Newman had filed two affidavits in opposition to defendants' motion to dismiss, the court converted defendants' motion to dismiss into a motion for summary judgment.

The district court first rejected Newman's argument "that his failure to disclose his income is irrelevant to whether judicial estoppel should be applied," noting that one of our prior unpublished decisions suggests that his "failure to disclose his income from the University is not only relevant, but is sufficient alone to support the application of judicial estoppel." (*Id.* at PID 335 (citing *Lewis v. Weyerhaeuser Co.*, 141 Fed. App'x 420, 428–29 (6th Cir. 2005)).) The court next rejected Newman's argument "that his failure to disclose the claims in this lawsuit should be disregarded because they were filed after his bankruptcy petition" because that argument "does not take into account [Newman's] continuing duty of disclosure under the Bankruptcy Code." (*Id.* (citing *Lewis*, 141 F. App'x at 424; *Harrah v. DSW Inc.*, 852 F. Supp. 2d 900, 904 (N.D. Ohio 2012)).)

The district court next considered and rejected four separate arguments in support of Newman's position that his omissions were the result of mistake or inadvertence. First, the court rejected Newman's argument that his judgment was impaired because he was "suffering from severe depression when the disclosures were required," noting that Newman "not only was able to work with his attorney to file his Bankruptcy Petition, but during the same period he was also able to obtain employment as an adjunct professor." (*Id.* at PID 338–39.) The court also stated that depression "cannot excuse a party's lack of diligence in complying with statutory obligations." (*Id.* at PID 338 (internal quotation marks and citations omitted).)

Second, the court rejected Newman's argument that he had relied on his attorney's advice that he was not required to disclose the income because the University "had not given him a firm

commitment to hire him on an ongoing basis." (*Id.* at PID 339.) The court noted both that "a party's failure to provide information to a bankruptcy court should not be excused due to reliance on poor legal advice," (*id.* (citing *White v. Wyndham Vacation Ownership Inc.*, 617 F.3d, 472, 483 (6th Cir. 2010)), and that counsel's alleged advice "was clearly erroneous, as [Newman] should have recognized based on the declarations that he signed and filed with the Bankruptcy Court" attesting that he "has no earned income in at least the last six months" and listing his occupation as "disabled" (*id.* (quoting BK Doc. 53-1)).

Third, the court rejected Newman's argument that he had effectively disclosed his income by providing his tax returns to the Trustee. The court first noted that even if Newman *had* disclosed his tax returns to the Trustee in a timely fashion, such disclosure "did not correct his misrepresentation to the Bankruptcy Court." (*Id.* at PID 340.) But, as the district court found, "it is reasonable to conclude that [Newman] did not provide the 2016 tax returns to the Trustee until after the Trustee moved to dismiss the bankruptcy case," (*id.*), because the Trustee filed a motion to dismiss on the ground that Newman had "failed to turn over a copy of the 2016 tax returns and/or tax refund to the Chapter 13 Trustee as required by Court Order," (BK Doc. 113 at 1), and Newman has never asserted that he provided the requested tax returns before the Trustee's motion. The district court stated that although it might be plausible to infer that a debtor's failure to disclose income is inadvertent where he had properly provided the required tax returns, "any such inference is obliterated by the fact that the 2016 tax returns (which reported most of [Newman's] University income) were provided only after the Trustee moved to dismiss the bankruptcy case." (R. 38, PID 340.)

Finally, the district court rejected Newman's argument that the omission of his employment was not material because his University income was de minimis, noting that $38,762.15 is not a de minimis amount.

## II. ANALYSIS

We review de novo both a district's court decision to grant summary judgment and a district court's application of judicial estoppel.[1] *White*, 617 F.3d at 475–76. However, the Supreme Court has also noted that because the doctrine "is intended to prevent 'improper use of judicial machinery,'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)), "judicial estoppel is 'an equitable doctrine invoked by the court at its discretion,'" *id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *White*, 617 F.3d at 476 (internal quotation marks omitted) (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). "Judicial estoppel is an 'equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.'" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). We have explicitly held that judicial estoppel may bar employment-related claims where the plaintiff has failed to disclose as an asset in a bankruptcy proceeding either the existence of such a claim or income derived from the employment relationship at issue. *See White*, 617 F.3d at 476 (holding that judicial estoppel barred employment

---

[1] No party has challenged the district court's decision to convert defendants' motion to dismiss into a motion for summary judgment.

claims because the plaintiff had failed to disclose those claims in a bankruptcy proceeding); *Lewis*, 141 Fed. App'x at 421–22 (holding that judicial estoppel barred employment claims because the plaintiff had failed to disclose in a bankruptcy proceeding both those claims and her employment).

"In short, to support a finding of judicial estoppel, we must find that: (1) [Newman] assumed a position that was contrary to the one that [he] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [Newman's] omission did not result from mistake or inadvertence." *White*, 617 F.3d at 478. Newman concedes that "Defendants met the first two prongs" of the *White* inquiry because his omissions qualify as contrary positions and the bankruptcy court adopted those positions by approving the Plan. (*See* Appellant Br. at 16.) The only issue before us, then, is whether Newman's omissions resulted from mistake or inadvertence. In making that determination, we must consider "whether: (1) [Newman] lacked knowledge of the factual basis of the undisclosed claims [and income]; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478.

Newman does not argue that he lacked knowledge of the factual basis of either the undisclosed claims or his University income. Regarding motive, Newman argues that "he had no motive to conceal [his University] income because each year he submitted copies of his tax returns, including his W-2 statements showing [the] income, to the Trustee." (Appellant Br. at 20.) But, we have observed that it "is always in a Chapter 13 petitioner's interest to minimize income and assets." *White*, 617 F.3d at 479 (quoting *Lewis*, 141 Fed. App'x at 426). And, Newman did not readily provide his 2016 tax returns to the Trustee.

Newman argues that the record demonstrates an absence of bad faith because he "notified the Trustee about his [University] income before he became aware of Defendants['] judicial

estoppel motion and, after he became aware of Defendants' motion, he took effective corrective measures to amend his bankruptcy filings to report his" income. (Appellant Br. at 23.) He also argues that the omission of his income was inadvertent because his bankruptcy counsel had advised him that he did not need to disclose the income and because he "took steps to correct [the] technical violation" in his bankruptcy filings.[2] (*Id.* at 3, 20–21.)

None of Newman's arguments is persuasive. Although it is true that Newman eventually corrected his omissions, he did so only after those omissions had been brought to the attention of the district and bankruptcy courts by other parties. While a party's efforts to correct omissions or misstatements are relevant to the question of bad faith, "the timing of [the] effort is also significant"; "efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss." *White*, 617 F.3d at 480. To allow a party to avoid judicial estoppel by rectifying omissions after a motion to dismiss has been filed "would encourage gamesmanship" and defeat the purpose of the doctrine. *Id.* at 481.

Here, Newman provided the Trustee with the 2016 tax returns reflecting the bulk of his University income only after the Trustee had moved to dismiss the bankruptcy proceeding for failure to provide that tax returns. And Newman failed to rectify the omissions of his employment claims until defendants moved to dismiss the instant suit. Those failures are highlighted by the fact that Newman had submitted multiple amended bankruptcy Plans and continued to update the bankruptcy court concerning other matters even after his Plan had been approved. The district court had sound reasons to conclude that "none of [Newman's] arguments supports a finding of mistake or inadvertence or excuses his conduct." (R. 38, PID 338.)

---

[2] Newman's two affidavits in opposition to defendants' motion largely concern his efforts to correct the omissions *after* defendants filed their motion to dismiss.

Newman's argument that he relied on the advice of counsel is similarly unavailing. Even setting aside the well-established rule that an individual is responsible for the actions taken on his behalf by his attorney under an agency theory, *see, e.g., White*, 617 F.3d at 483–84, the omissions here are so blatant that Newman could not have fairly relied on the alleged advice of counsel. For example, Newman falsely stated that he had $0 in income and failed to disclose his employment even in response to questions about part-time work. (*See* BK. Doc. 1 at 23.) Similarly, although he was obligated to inform the court of any changes to his financial situation, Newman failed to disclose his employment claims until after defendants filed their motion to dismiss. In short, the district court did not err in finding that Newman's inadequate disclosures were not the result of mistake or inadvertence—especially in light of Newman's sophistication as an attorney and professor—and that the doctrine of judicial estoppel therefore bars his claims.

In the alternative, Newman argues that the doctrine of unclean hands bars the application of judicial estoppel. (*See* Appellant Br. at 26–30.) Although Newman raised this issue below, the district court did not discuss the doctrine in its order and appears to have implicitly rejected it. Newman argues that three actions by defendants' counsel rise to the level of unclean hands: (1) defendants' counsel communicated with the bankruptcy Trustee concerning whether the Trustee was aware of Newman's employment and the claims in the instant action, thus "attempt[ing] to interfere with [Newman's] agreement with the Trustee regarding his approved bankruptcy plan," (Appellant Br. at 26–28); (2) defendants' counsel "improperly took a frivolous position in threatening [Newman] with Rule 11 sanctions,"[3] (*id.* at 28); and (3) defendants' counsel

---

[3] This argument is premised on a footnote in defendants' memorandum in support of their motion to dismiss stating that "the filing of the instant lawsuit raises the question of whether Newman has properly complied with Fed. R. Civ. P. 11." (R. 18, PID 79.)

"violated the Ohio Professional Conduct Rule 1.2[(e)][4] when she threatened [Newman] with criminal charges regarding his Social Security disability benefits" (*id.* at 29–30, 29 n.11).[5]

We review a district court's application of the doctrine of unclean hands for abuse of discretion. *Osborn v. Griffin*, 865 F.3d 417, 451 (6th Cir. 2017) (citing *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995)). Under the doctrine of unclean hands, courts may deny relief when "the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited*, 52 F.3d at 1383.

None of defendants' counsel's actions rise to the level of fraud, deceit, unconscionability, or bad faith. Indeed, counsel's communications with the Trustee were intended to determine, prior to filing a motion to dismiss, whether Newman had in fact disclosed his income and claims. There is no indication that counsel behaved improperly. Similarly, although defendants' counsel implied, in footnotes, that Newman may not have disclosed his claims and income in connection with his social security benefits and inquired whether Newman had complied with Rule 11, such innocuous suggestions, without more, are not unconscionable.

Newman has therefore failed to demonstrate that the doctrine of unclean hands should apply here.

### III. CONCLUSION

For the foregoing reasons, the district court's order is **AFFIRMED**.

---

[4] Pursuant to Ohio Rule of Professional Conduct 1.2(e), a lawyer shall not present, participate in presenting, or threaten to present criminal charges or professional misconduct allegations solely to obtain an advantage in a civil matter unless "otherwise required by law."

[5] This is a reference to another footnote in defendants' memorandum stating that a "question remains whether Newman disclosed his earnings from the University in conjunction with his claim for and receipt of social security benefits." (R. 18, PID 71.)